UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CASE NO:

INTEGRATED COMPUTER
SOLUTIONS, INC.,

     Plaintiff-Petitioner,

v.

LARIMER SKYVIEW, INC. f/k/a
ALEPH OBJECTS, INC.,

     Defendant.

## **INTEGRATED COMPUTER SOLUTIONS, INC.'S**
## **VERIFIED PETITION TO CONFIRM ARBITRATION AWARD**

Pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 9, Petitioner

Integrated Computer Solutions, Inc. ("ICS") hereby petitions the Court to confirm and

enter judgment upon the arbitration award entered and served on Larimer Skyview, Inc.,

f/k/a Aleph Objects, Inc., on July 6, 2020. The arbitration award was issued by a single

arbitrator in the arbitration styled *Integrated Computer Solutions, Inc. v. Larimer*

*Skyview, Inc., f/k/a Aleph Objects, Inc.*, American Arbitration Association ("AAA")

arbitration case number 01-20-0000-0493.

In support of this Petition, ICS states to the Court as follows:

### **Parties, Jurisdiction, and Venue**

1. ICS is a corporation incorporated under the laws of the Commonwealth of

    Massachusetts with its principal place of business in Waltham, Massachusetts.

1

2. Respondent Larimer Skyview, Inc., f/k/a Aleph Objects, Inc. ("Larimer"), is a Colorado corporation with a principal place of business in Loveland, Colorado.

3. This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.

4. This Court has personal jurisdiction over Larimer by virtue of its substantial contacts with the Commonwealth of Massachusetts, including transacting business in Massachusetts, and its consent to the jurisdiction of Massachusetts courts.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and 9 U.S.C. § 9 because ICS's principal place of business is in the District of Massachusetts, the arbitration award was made in the District of Massachusetts, and a substantial part of the events giving rise to the claims occurred in the District of Massachusetts.

### Statement of Facts

6. ICS submitted the underlying dispute to arbitration before the AAA on January 7, 2020, pursuant to the parties' agreement to arbitrate "[a]ny dispute arising from or with respect to this Agreement shall be decided by arbitration by the American Arbitration Association" and applying Massachusetts law.  (Master Services Agreement at p. 4, attached hereto as Exhibit A).

7. On April 7, 2017, Larimer and ICS entered into the Master Services Agreement ("MSA"). (MSA, Ex. A).

8. The MSA further provided that the "[p]arties agree that Suffolk County in the Commonwealth of Massachusetts shall be the proper forum for any action brought against the other [p]arty." (MSA at p.4, Ex. A).

9. Furthermore, 9 U.S.C. § 9 provides that arbitration awards may be confirmed as a judgment.

10. On March 9, 2020, a preliminary hearing was held by the AAA which set a scheduling order regarding the arbitration. Counsel for Larimer and for ICS attended the hearing. (AAA letter to the parties, March 13, 2020, attached hereto as Exhibit B).

11. Notice of the arbitration hearing was duly given to both parties. (Partial Final Award at p.2, attached as Exhibit C).

12. On May 19, 2020, Arbitrator Merriann M. Panarella, Esq., held an evidentiary hearing via telephone. Counsel for ICS and Lisa Romero, Director of ADR Services for the AAA, attended the hearing.  (Partial Final Award at p.2, Ex. C).

13. Larimer did not appear at the arbitration hearing "although they were provided notice of the hearing in accordance with the Rules." (Partial Final Award at p.2, Ex. C).

14. ICS sought damages from Larimer for work performed under the MSA (MSA, Ex. A).

15. At the arbitration hearing, ICS presented evidence that the parties entered into the MSA on April 7, 2017.  The MSA provides that the "…Client shall pay all undisputed amounts owing net thirty (30) days." (Partial Final Award at p.2, Ex. C).

3

16. At the arbitration hearing, ICS's Daniel Paradis testified that "ICS's regular practice  regarding the recording of time for services performed under the MSA is to have its engineers, testing professionals, consultants and others who worked on a project enter the number of hours that person worked on the project with a description of the work performed." (Partial Final Award at p.2, Ex. C).

17. ICS creates and maintains these records in the ordinary course of business and refers to them as "work logs" which are then used to generate invoices which are then sent to the customer. (Partial Final Award at p.2-3, Ex. C).

18.  ICS entered into evidence all invoices indicating hours worked by a specific individual with a short description of the services rendered under the MSA for Larimer. (Partial Final Award at p.3, Ex. C).

19. Larimer ceased paying ICS invoices in May 2019. (Partial Final Award at p.3, Ex. C).

20. In October 2019, at a regularly scheduled status call, Larimer's CEO, Jeffrey Moe, abruptly terminated the MSA. (Partial Final Award at p.3, Ex. C).

21. In November 2019, Paradis sent a letter to Larimer demanding payment in the amount of $389,981.49 for work performed under the MSA. (Partial Final Award at p.3, Ex. C).

22. On June 5, 2020, the arbitrator found that ICS is entitled to recover $389,981.49 against Larimer. (Partial Final Award at p.3, Ex. C).

23. Larimer was ordered to pay ICS $389,981.49 within thirty (30) days of the Partial Final Award. (Partial Final Award at p.4, Ex. C).

24. The arbitrator found that ICS was the prevailing party and therefore entitled to "reasonable attorneys' fees and expenses in addition to any other allowable relief" under the MSA. Partial Final Award at p.3-4, Ex. C).

25. On July 6, 2020, the arbitrator  issued a Final Award. (Final Award, attached hereto as Exhibit D).

26. The Final Award incorporated the Partial Final Award in its entirety. (Final Award at p. 1, Ex. D).

27. The arbitrator found ICS' request for attorneys' fees of $5,580 to be reasonable and awarded ICS $5,580 in attorney fees. (Final Award at p. 2, Ex. D).

28. The arbitrator also awarded ICS costs and expenses pursuant to the MSA and AAA Rules 53 and 55 (administrative fee and arbitrator compensation) of $9,440 for a total of $15,020 in counsel fees, administrative expenses and arbitrator compensation. (Final Award at p. 2, Ex. D).

29. Larimer was ordered to pay ICS $15,020 within thirty (30) days of the Final Award.

30. The Partial Final Award  and the Final Award were served on Larimer by the AAA on June 5, 2020 and July 6, 2020 respectively.

31. Larimer has failed to pay any amounts it was ordered to pay in the Partial Final Award and the Final Award (together the "Arbitration Award").

### Request for Relief

Pursuant to 9 U.S.C. § 9, ICS respectfully requests that the Court enter an Order:

    a.  Confirming the Arbitration Award;

    b.  Entering final judgment in favor of ICS and against Larimer pursuant to the terms of the Arbitration Award in the amount of $405,001.49, with interest at

the rate of 12% per annum[1] from January 7, 2020  until the Arbitration Award is paid in full; and

c.   Any such other and further relief as the Court deems appropriate.

Respectfully submitted, this 31st day of August, 2020.

INTEGRATED COMPUTER SOLUTIONS, INC.
By its attorneys,

Dated:  August 31, 2020         /s/ *Christopher Maffucci*
                                Christopher Maffucci  (BBO #645972)
                                CASNER & EDWARDS, LLP
                                303 Congress Street, 2nd Floor
                                Boston, Massachusetts 02210
                                Telephone:  (617) 426-5900
                                Facsimile:  (617) 426-8810
                                maffucci@casneredwards.com

## VERIFICATION

I, Daniel P. Paradis, Chief Counsel of Integrated Computer Solutions, Inc., hereby depose and state as follows: I have read the foregoing Verified Petition to Confirm Arbitration Award, and, knowing the contents thereof, have found that the statements of fact set forth therein are based on my own personal knowledge and are true, except as to those be based on information and belief, which I believe to be true, and that no material facts have been omitted therefrom.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY ON THIS 31st DAY OF AUGUST, 2020

/s/*Daniel P. Paradis*
Daniel P. Paradis, Chief Counsel
Integrated Computer Solutions, Inc.

---

[1] Under Massachusetts law, the award shall bear interest from the date of the award at the legal rate in Massachusetts, which is 12% per year. Mass Gen. Laws Chp. 231, § 6C.

Exhibit A

**Integrated Computer Solutions, Inc.**

**Master Services Agreement**

This Master Services Agreement (this "**Agreement**"), effective as of the date set forth on the signature page hereto (the "**Effective Date**"), is by and between Integrated Computer Solutions, Inc., a Massachusetts corporation with its principal place of business at 230 Second Avenue in Waltham, MA 02451 ("**ICS**"), and the business whose name and address is set forth on the signature page hereto ("**Client**"). This Agreement sets forth the terms and conditions under which ICS will provide professional services for Client. In consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, ICS and Client agree to the following terms and conditions.

**1.   Services; Statements of Work.** ICS shall provide personnel to Client to provide professional services on an as-needed basis in accordance with a statement of work, which shall be contained in one or more exhibits to this Agreement (the "**Services**") and sequentially numbered as Exhibit A-1, Exhibit A-2, etc., as needed. Each such exhibit, which may also be referred to as a "**Statement of Work**", is incorporated herein by reference and made a part of this Agreement. The Services shall be performed by ICS and Client shall pay the fees for such Services as set forth in Section 3 hereof or in such Statement of Work. No Services will be performed hereunder until ICS and Client execute this Agreement and each required Statement of Work. If any provision of this Agreement is in contradiction with a provision in a Statement of Work, the provision of this Agreement shall govern unless otherwise explicitly stated in such Statement of Work.

**2.   Scope.** No modifications to the scope of Services will be made without prior written approval of ICS and Client. A "**Change Order**" means a material change in the scope of the Services based either on a request for such change by Client or if there a material change in any assumption described either in a Statement of Work or a proposal that is subsequently incorporated into such Statement of Work. If Client requests a Change Order ICS shall submit a written estimate of the increase in cost and/or the savings in cost associated with performing the Change Order. The Parties will work in good faith to reach an agreement based on the estimate and shall execute a Change Order referring to this the Statement of Work and setting forth the agreed-to changes and the fees or savings associated therewith. If a material assumption proves to be inaccurate ICS will submit a written description of the changes necessary to work around such incorrect assumption and the Parties will work in good faith to develop a Change Order that substantially meets the requirements of the original Statement of Work. Each Change Order must be signed before implementing the change(s).

**3.   Payment for Services; Taxes.** Unless otherwise set forth in a Statement of Work ICS will invoice Client for Services on or about the fifteenth and last day of each month and Client shall pay all undisputed amounts *owing net thirty (30) days*. Unless Client provides sufficient proof of exemption, any applicable taxes, including but not limited to sales, use or value-added taxes, and other charges such as duties, customs, tariffs, imposts, and government imposed surcharges shall be stated separately and ICS shall remit all such charges to the appropriate tax authority.

**4.   Term.** This Agreement shall commence on the Effective Date and shall continue until terminated in accordance with Section 7 hereof. Each Statement of Work shall terminate upon completion of the Services described therein, or as otherwise provided for in Section 7.

**5.   Relationship of Parties.** ICS is an independent contractor. Nothing in this Agreement shall be construed as creating any relationship between Client and ICS other than that of buyer and seller respectively. This Agreement is not intended to be, nor shall it be construed as, creating a joint venture, association, partnership, franchise, or other form of business organization or agency relationship.

ICS | MSA
Rev 01/17

### 6.  Personnel; Non-Solicitation.

(a)  ICS employees shall observe the working hours, working rules (including without limitation confidentiality requirements) and holiday schedule of Client while working on Client's premises.

(b)  ICS and Client shall each designate an individual to serve as the project leader, which project leader's contact information will be set forth in the Statement of Work.

(c)  During the term of this Agreement, and for twenty-four (24) months after the last delivery of Services by ICS to Client under a Statement of Work, neither Party nor its affiliates may directly or indirectly solicit for employment, cause to be solicited, retain, employ, or contract with any employee or consultant of the Employing Party (as defined below), without first receiving written consent from the Employing Party. The Parties agree that if either Party violates the provisions of this paragraph, the Soliciting Party (as defined below) will pay the Employing Party One Hundred Twenty-Five Thousand Dollars ($125,000) as liquidated damages, which amount will be due and payable net ten (10) days. For purposes of this Section 6, "**Employing Party**" shall mean the party employing an individual or consultant during the term of this Agreement and "**Soliciting Party**" shall mean the party seeking to retain, employ, or contract with such individual or consultant. The Parties acknowledge and agree that this liquidated damages provision represents an attempt, based upon both Parties' experience in the software industry, to quantify actual damages to the aggrieved party, and the Parties therefore explicitly stipulate that such sum shall not be construed as a penalty. Nothing in this non-solicitation covenant shall prevent a Party from hiring an employee or contractor of the other Party who responds to a general advertisement, job fair, internet posting or other general solicitation.

### 7.  Termination.

(a)  ICS or Client may terminate this Agreement, including any Statement of Work, without prejudice to any other rights or remedies under this Agreement at law or in equity, in any one of the following events: (i) if the other Party commits a material breach of any of the provisions specified in this Agreement and fails to remedy such breach within thirty (30) days after having been given written notice to do so; or (ii) if the other Party is unable to pay its debts as they become due, commits an act of bankruptcy, becomes bankrupt, goes or is put into liquidation or if a receiver is appointed over any part of such other Party's assets. Each Statement of Work shall expire upon completion of and payment for the Services specified therein.

(b)  ICS or Client may terminate this Agreement, including any Statement of Work, without any reason by giving the other Party ten (10) days written notice. If either ICS or Client terminates for convenience, Client will pay ICS for all work completed.

(c)  Upon termination of this Agreement ICS shall promptly return to Client all copies in whatever form of any Client data, records, or materials, including, without limitation, all materials incorporating any proprietary information of Client, or shall destroy all such materials and certify that all such materials have been destroyed. ICS shall also furnish to Client all work in progress or portions thereof, including all incomplete work.

### 8.  Confidentiality

(a)  "**Confidential Information**" means information relating to the research, development, products, methods of manufacture, trade secrets, business plans, Clients, finances, and personnel data related to the business affairs of both Parties. Confidential Information does not include any information (i) which is lawfully known before either Party discloses it to the other; (ii) which has become publicly known through no wrongful act of either Party; or (iii) which either Party developed independently, as evidenced by appropriate documentation.

(b)  Neither Party will disclose any Confidential Information and each Party will take all reasonable precautions to prevent the unauthorized dissemination of Confidential Information, both during and after the term of this Agreement. Without limiting the scope of this duty both Parties agree to limit its internal

distribution of Confidential Information to their employees and agents who have a need to know, and to take steps to ensure that the dissemination is so limited. Each Party agrees not to use any Confidential Information for its own benefit or for the benefit of another. Without limiting the scope of this duty, both Parties agree not to design or manufacture any product which incorporates the other Party's Confidential Information.

(c)  Confidential Information of Client remains the property of Client and Confidential Information of ICS remains the property of ICS. No license or other rights in the Confidential Information is granted by either Party.

(d)  Client explicitly acknowledges and agrees that the existence of this Agreement and the business relationship between the Parties shall not be considered Confidential Information and ICS may in its sole discretion publicize or affirm the existence of such business relationship.

9.   Intellectual Property Rights; Ownership of Work Product; License; Assignment

(a)  For purposes of this Agreement the following terms have the following meanings:

(i)   "Intellectual Property Rights" means patents, trademarks, service marks, design rights (whether registrable or otherwise), applications for any of the foregoing, copyrights and database rights, and all other similar rights or obligations whether registrable or not in any country and "Intellectual Property" shall be construed accordingly.

(ii)  "Background Intellectual Property Rights" means Intellectual Property Rights embodied in software, including the Terra Toolkit Software, if used (the "Terra Software"), algorithms, methods, code, concepts, ideas, information, data, drawings, reports and documentation which are conceived, originated or generated other than in providing Services hereunder.

(iii) "Foreground Intellectual Property Rights" means Intellectual Property Rights embodied in any software, algorithms, methods, code, concepts, ideas, information, data, drawings, reports and documentation which are conceived, originated or generated in providing Services hereunder.

(b)  The Parties agree that ownership and rights of use of Intellectual Property shall be as follows:

(i)   Ownership of Background Intellectual Property, including without limitation the Terra Software, shall not be affected by this Agreement.

(ii)  Foreground Intellectual Property shall be owned by Client. To the extent such Foreground Intellectual Property does not include Confidential Information of Client, ICS shall be entitled to utilize concepts, ideas, techniques or know-how obtained during the performance of Services hereunder, including without limitation further developments to the Terra Software, for others at any time in the future. Neither Party shall have any obligation to limit or restrict the job duties of its personnel or to pay royalties for any work resulting from these concepts, ideas, techniques or know-how.

(iii) ICS hereby grants to Client a non-exclusive, royalty free, world-wide, irrevocable license under its relevant Background Intellectual Property Rights to enable Client to use, modify, maintain, and exploit the Foreground Intellectual Property. ICS will indemnify and hold harmless and at the request of Client, defend Client from and against all claims, liabilities, damages, losses, and expenses including but not limited to reasonable attorneys' fees and costs of suit, arising out of or related to all claims that the use or disclosure of either the Background Intellectual Property or the Foreground Intellectual Property violates any third party's rights.

(c)  If the Terra Software is used in performing Services, ICS will grant to Client, on the terms and conditions set forth in the Terra Software End User License Agreement attached hereto as Exhibit B (the "License"), a limited right to use the Terra Software. For purposes of clarity, ICS is and shall remain the sole owner of the Terra Software.

(d) If any of the Foreground Intellectual Property is for any reason deemed not to be a work-for-hire under U.S Copyright law, ICS hereby assigns to Client, all right, title and interest ICS has in the Foreground Intellectual Property, but not the Terra Software, including all source code, patents, copyrights, publishing rights, and all rights to use, reproduce or otherwise exploit the Foreground Intellectual Property in all channels, formats or media, whether in existence at the time of execution. ICS will execute any instruments Client may reasonably request to evidence, establish, maintain and protect Client's ownership of the Foreground Intellectual Property, and all other rights, titles and interests thereto.

## 10. Warranties and Limitation of Liabilities

(a) ICS warrants that the Services will be provided in a professional and workmanlike manner. The foregoing warranty does not apply to defects resulting from misuse, neglect, or accident, including without limitation operation outside of the environmental or use specifications, improper or inadequate maintenance by Client or use in combination with software or products not supplied or authorized by ICS. ICS makes no other warranties of any kind whatsoever, express or implied, with respect to the Services or any supplied documentation, including but not limited to warranties of fitness for a particular purpose or merchantability. All other warranties are expressly disclaimed.

(b) ICS shall not be liable for consequential, incidental, special or indirect damages, even if it has been advised of the possibility of such damages.

(c) Client agrees that the aggregate liability of ICS hereunder for damages, regardless of the form of action, shall not exceed the total payments received by ICS hereunder.

**11. Assignment.** Neither ICS nor Client shall assign or delegate its obligations under this Agreement either in whole or in part without the prior written consent of the other Party, which consent shall not be unreasonably withheld.

**12. Notices.** Any notices required by this Agreement shall be given to the appropriate Party specified herein or in the applicable Statement of Work. Such notice shall be deemed given upon personal delivery to the appropriate address or three (3) days after the date of mailing if sent by certified or registered mail. Notice may also be provided by electronic means including email and facsimile provided such means provides for electronic verification of receipt of such notice.

**13. Complete Understanding.** This Agreement and the attached Statement of Work constitute the full and complete understanding and agreement of the Parties relating to the subject matter hereof and supersede all prior understandings and agreements relating to such subject matter. Any waiver, modification, or amendment of any provision of this Agreement shall be effective only if in writing and signed by the Parties. The provisions of this Agreement shall prevail over any conflicting provisions in a purchase order, acceptance notice, or other document.

**14. Governing Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts including all matters of construction, validity, performance and enforcement and without regard to the principles of conflicts of laws thereof. The Parties agree that Suffolk County in the Commonwealth of Massachusetts shall be the proper forum for any action brought against the other Party.

**15. Arbitration.** Any dispute arising from or with respect to this Agreement shall be decided by arbitration by the American Arbitration Association in accordance with its Commercial rules in Boston, Massachusetts. At the request of either Party, the proceedings will be conducted in secrecy.

**16. Attorneys' Fees.** If any legal action is necessary to enforce this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and expenses in addition to any other allowable relief.

**17. Survival of Terms; Severability.** The provisions of Sections 5, 6, 9, 10, 11, hereof shall survive termination of this Agreement. Should any provision of this Agreement be found by a court of competent jurisdiction to

be unenforceable for any reason, such provision shall be reformed to give the fullest effect allowable and the remainder of this Agreement shall continue in full force and effect.

**18. Counterparts; Facsimile Signatures.** This Agreement may be executed in multiple counterparts, including facsimile, PDF and other electronic counterparts, with the same effect as though all Parties had signed one and the same instrument.

IN WITNESS WHEREOF, the Parties have executed this Master Services Agreement as of
April 7, 2017.

**Integrated Computer Solutions, Inc.**

By: ___Mark J. Hatch___

Name: _Mark J. Hatch_

Title: ___COO___

Client

By: _____

Name: ___Jeffrey Mue___

Title: ___CEO___

Address for Notice:
626 W. 66th St
Loveland, CO
80538

Exhibit B



AMERICAN
ARBITRATION
ASSOCIATION

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION

Karen Jalkut
Vice President
200 State Street, 7th floor
Boston, MA 02109
Telephone: (617)451-6600
Fax: (617)451-0763

March 13, 2020

Julie R. Bryan, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210
Via Email to: bryan@casneredwards.com

Andrew Priebe, Esq.
Vahrenwald, Johnson & McMahill, LLC
125 South Howes Street, Suite 1000
Fort Collins, CO 80521
Via Email to: andrew@vmmmlaw.com

**Case Number: 01-20-0000-0493**
Integrated Computer Solutions, Inc.
-vs-
Larimer Skyview, Inc. f/k/a Aleph Objects, Inc.

Dear Counsel:

This will confirm a preliminary hearing in the above matter was held on March 9, 2020. Enclosed please find the scheduling order established during the preliminary hearing.

The hearing has been set for May 19, 2020 pursuant to the enclosed Notice of Hearing.

If you have any questions, please do not hesitate to contact me.

Sincerely,

Lisa A Romeo
Director of ADR Services
Direct Dial: (617)695-6037
Email: LisaRomeo@adr.org

Enclosure

cc:     Mason C. Mitchell, Esq.
        Merriann M. Panarella, Esq.

AMERICAN ARBITRATION ASSOCIATION

|  |  |
|---|---|
| INTEGRATED COMPUTER SOLUTIONS, INC., | ) ) ) |
| | ) |
| Claimant, | ) |
| | ) |
| v. | ) Case No. 01-20-0000-0493 |
| | ) |
| LARIMER SKYVIEW, INC. f/k/a ALEPH OBJECTS, INC., | ) ) |
| | ) |
| | ) |
| Respondent. | ) |

### PRELIMINARY HEARING AND SCHEDULING ORDER NO. 1.

A Preliminary Hearing was held by telephone conference on March 9, 2020, at 4:30 p.m. (E.T.) in connection with the above-entitled proceeding. Julie R. Bryan, Esq. of Casner & Edwards, LLP on behalf of the Claimant Integrated Computer Solutions, Inc. ("ICS" or "Claimant"), Arbitrator Merriann M. Panarella, Esq., and Lisa Romeo, Director of ADR Services, American Arbitration Association attended the hearing. Respondent Larimer Skyview, Inc. f/k/a/ Aleph Objects, Inc. ("Larimer" or "Respondent"), did not appear. Instead, on January 14, 2020, Andrew Priebe, Esq., of Vahrenwald, McMahill & Mitchel, on behalf of Respondent, informed Lisa Romeo that Larimer "[d]oes not intend to respond to the Demand for Arbitration as the company does not have the continued wherewithal to participate." He indicated that any further communication on this matter was to be directed to him.

**By Order of the Arbitrator, the following is now in effect:**

1. Rules: According to the parties' Master Services Agreement (the "Agreement"), "[a]ny dispute arising from or with respect to this Agreement shall be decided by arbitration by the American Arbitration Association in accordance with its Commercial Rules in Boston, Massachusetts."

2. Law: According to the parties' Agreement, the substantive law of Commonwealth of Massachusetts will apply to the parties' claims and defenses.

3. Parties: The Claimant confirmed that all necessary and appropriate parties are included in the arbitration.

4. Claims/Counterclaims/Answers: The claimant confirmed that all necessary and appropriate claims are included in the arbitration.

5. Data Protection: Claimant did not identify any cybersecurity or data protection issues.

6. Claimant's Evidence: Claimant will submit all evidence it intends to rely upon as well as any prehearing brief to the Arbitrator and Respondent on or before April 17, 2020.

7. Respondent's Evidence: Respondent will submit all evidence it intends to rely upon as well as any prehearing brief to the Arbitrator and Claimant on or before April 24, 2020.

8. Evidentiary Hearing: A telephonic hearing on this matter will take place at 11 a.m. (E.T.) on May 19, 2020.

9. Award: The award rendered will be briefly reasoned.

SO ORDERED.

Dated: March 12, 2020.

/s/*Merriann M. Panarella, Esq.*
Merriann M. Panarella, Esq.
Arbitrator



AMERICAN
ARBITRATION
ASSOCIATION

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION

## NOTICE OF HEARING

March 13, 2020

Julie R. Bryan, Esq.
Casner & Edwards, LLP
303 Congress Street
Boston, MA 02210
Via Email to: bryan@casneredwards.com

Andrew Priebe, Esq.
Vahrenwald, Johnson & McMahill, LLC
125 South Howes Street, Suite 1000
Fort Collins, CO 80521
Via Email to: andrew@vmmmlaw.com

**Case Number: 01-20-0000-0493**
Integrated Computer Solutions, Inc.
-vs-
Larimer Skyview, Inc. f/k/a Aleph Objects, Inc.

PLEASE TAKE NOTICE that a hearing in the above-entitled arbitration will be held as follows:

| | |
|---|---|
| Type: | Evidentiary Hearing by Conference Call |
| Date: | May 19, 2020 |
| Time: | 11:00 AM Eastern // 9:00AM Mountain |
| Please dial in: | 888-537-7715 // 1860 1614# |

The arbitrator has reserved the above date. Therefore, parties are expected to be punctual and prepared to present their case.   The arbitrator may postpone any hearing upon agreement of the parties, upon request of a party for good cause shown, or upon the arbitrator's own initiative. In some instances, postponements may be subject to cancellation fees, as noted in the Arbitrator's resume and Notice of Compensation Arrangements.  Any request for postponement should be directed to the AAA, copying all parties.

Should you require special equipment for the hearing, please contact me as soon as possible.

Lisa A Romeo
Director of ADR Services
Direct Dial: (617)695-6037
Email: LisaRomeo@adr.org

cc:   Mason C. Mitchell, Esq.
      Merriann M. Panarella, Esq.

Exhibit C

AMERICAN ARBITRATION ASSOCIATION

|  |  |
|---|---|
| INTEGRATED COMPUTER SOLUTIONS, INC.,<br><br>        Claimant,<br><br>        v.<br><br>LARIMER SKYVIEW, INC. f/k/a ALEPH OBJECTS, INC.,<br><br>        Respondent. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 01-20-0000-0493

## PARTIAL FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreements enter into by Claimant Integrated Computer Solutions, Inc. and Respondent Larimer Skyview, Inc. f/k/a/ Aleph Objects, Inc. ("Aleph" or "Respondent"), having been duly sworn and having heard the proofs and allegations of the Claimant, and the Respondent having failed to appear in the arbitration after due notice in accordance with the Commercial Rules of the American Arbitration Association (the "Rules"), do hereby award as follows:

The Parties

Claimant Integrated Computer Solutions, Inc. ("ICS" or "Claimant") is a Massachusetts corporation with its principal place of business in Waltham, Massachusetts. Respondent Larimer Skyview, Inc. f/k/a/ Aleph Objects, Inc. ("Aleph" or "Respondent"), is a Colorado Corporation with a place of business in Loveland, Colorado.

1

### The Hearing

On May 19, 2020 at 11:00 a.m. (E.T.), Arbitrator Merriann M. Panarella, Esq. held an evidentiary hearing by telephone in connection with the above-entitled proceeding. Julie R. Bryan, Esq. appeared on behalf of Claimant and Lisa Romeo, Director of ADR Services, American Arbitration Association, attended the hearing. Respondent did not appear at the arbitration hearing, although they were provided notice of the hearing in accordance with the Rules.

In this matter, ICS sought damages from Respondent for work performed under a Master Services Agreement (Exhibit A) pursuant to which ICS provided professional services including software engineering, consulting, and testing among other activities. Claimant called one witness, Daniel P. Paradis, Esq., general counsel for ICS.

### The Master Services Agreement

ICS presented evidence that the parties entered into a Master Services Agreement (the "MSA") on April 7, 2017 which provides in part: "Any dispute arising from or with respect to this Agreement shall be decided by arbitration by the American Arbitration Association in accordance with its Commercial Rules in Boston." The MSA provides that "…Client shall pay all undisputed amounts owing net thirty (30) days." Mr. Paradis testified that ICS's regular practice regarding the recording of time for services performed under the MSA is to have its engineers, testing professionals, consultants, and others who worked on a project enter the number of hours that person has worked on the project with a description of the work performed. ICS creates and maintains these records in the ordinary course of business and refers to them as 'work logs.' ICS entered into evidence all work logs associated with services under the MSA for Respondent. These work logs are then used to generate invoices which are then sent to

customers. ICS entered into evidence all invoices indicating the hours worked by a specific individual with a short description of services rendered under the MSA for Respondent. ICS produced evidence that Respondent ceased paying invoices in May 2019 although they requested that work be done through and including October 2019. In October 2019 at a regularly scheduled status call, Respondent's CEO. Jeffrey Moe abruptly terminated the MSA.

ICS introduced evidence that in November 2019, Mr. Paradis sent a letter to Respondent demanding payment in the amount of for $389,981.49 for work performed. Claimant submitted into evidence unpaid invoices from May 2019 through October 15, 2019 totaling $462,566.49. Mr. Paradis testified that the lower amount set forth in the demand letter and in the Demand for Arbitration reflected discounts provided to Respondent.

On May 29, 2020, Mr. Paradis submitted an affidavit in this proceeding answering questions raised by the Arbitrator during the hearing. Mr Paradis's May 29, 2020 Affidavit included five additional exhibits : Exh. A-Aleph Objects Analysis, Exh. B-Invoice dated April 19, 2019, Exh. C-Ongoing Support, Exh. D-Proposal dated May 6, 2019, and Exh. E-Purchase Order Confirmation #PO32010. All exhibits attached to Mr. Paradis's Affidavit are admitted into evidence.

Given the undisputed evidence, I find that the Claimant is entitled to recover $389,981.49 against Respondent, Larimer Skyview, Inc. f/k/a Aleph Objects, Inc.

### Fees and Costs

ICS has requested attorney's fees and costs associated with enforcing the payment clause in the MSA. The MSA provides: "If any legal action is necessary to enforce this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and expenses in addition to any

3

other allowable relief." Pursuant to the terms of the MSA and the provisions of Rule 47 (Scope of the Award) (d), the Arbitrator finds that Respondent shall be liable for attorney fees.

ICS also requests costs associated with this proceeding. According to the MSA and Rules 53 (Administrative Fees) and Rule 55 (Neutral Arbitrator's Compensation), the Arbitrator finds that Respondents shall be liable for the administrative costs of the AAA and the compensation of the Arbitrator.

**AWARD**

1. Claimant is awarded damages against Respondent caused by the breach of the MSA and failure to pay for professional services rendered. Within thirty (30) days from the date of transmittal of this Partial Final Award to the parties, Respondent shall pay to ICS. the total sum of $389,981.49 in damages.

2. The hearing shall be re-opened solely for the determination of attorneys' fees. Claimant shall submit an affidavit for attorneys' fees no later than June 12, 2020. Respondent shall file any response no later than June 19, 2020.

3. This Partial Final Award is in final settlement of all claims and counterclaims submitted in this Arbitration with the exception of attorney's fees and the fees and expenses of the American Arbitration Association and the Arbitrator.

SO ORDERED.

Dated: June 5, 2020.

Merriann M. Panarella, Esq.
Arbitrator

Exhibit D

## AMERICAN ARBITRATION ASSOCIATION

INTEGRATED COMPUTER SOLUTIONS,
INC.,

        Claimant,

        v.

LARIMER SKYVIEW, INC. f/k/a ALEPH
OBJECTS, INC.,

        Respondent.

Case No. 01-20-0000-0493

### FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreements enter into by Claimant Integrated Computer Solutions, Inc. ("ICS" or "Claimant"), and Respondent Larimer Skyview, Inc. f/k/a/ Aleph Objects, Inc. ("Aleph" or "Respondent"), having been duly sworn and having heard the proofs and allegations of the Claimant, the Respondent having failed to appear in the arbitration after due notice in accordance with the Commercial Rules of the American Arbitration Association (the "Rules"), issued a Partial Final Award dated June 5, 2020 and reopened the hearing for a determination of costs and fees. I hereby award as follows:

1.  The Partial Final Award is incorporated herein in its entirety.

2.  ICS has requested attorney's fees and costs associated with enforcing the payment clause in the Master Services Agreement (the "MSA"). The MSA provides, "If any legal action is necessary to enforce this Agreement, the prevailing Party shall be entitled to reasonable

attorneys' fees and expenses in addition to any other allowable relief." As ordered in the Partial Final Award issued on June 5, 2020, ICS is the prevailing party in this matter. Pursuant to the terms of the MSA and the provisions of the American Arbitration Association ("AAA") Rule 47 (Scope of the Award) (d), the Arbitrator finds that Respondent shall be liable for attorney fees.

3. On June 15, 2020, Counsel for ICS submitted "Affidavit of Counsel in Regard to Attorneys' Fees and Costs Incurred by Claimant Integrated Computer Solutions, Inc. In Connection with Its Claims Against the Respondent" ("Affidavit Regarding Fees"). Aleph has not filed any response to ICS's Affidavit Regarding Fees.

4. The Arbitrator has reviewed the Affidavit Regarding Fees and the exhibits attached thereto, finds the fees submitted in the amount of $5,580 to be reasonable, and awards ICS $5,580 in attorneys' fees.

5. ICS also requests costs associated with this proceeding. The MSA provides, "If any legal action is necessary to enforce this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and expenses in addition to any other allowable relief." As ordered in the Partial Final Award issued on June 5, 2020, ICS is the prevailing party in this matter. Pursuant to the terms of the MSA and provisions of AAA Rule 53 (Administrative Fees) and Rule 55 (Neutral Arbitrator's Compensation) ), the Arbitrator finds that Respondent shall be liable for the administrative costs of the AAA and the compensation of the Arbitrator.

6. The administrative costs of the AAA are $4,400. The fees of the Arbitrator are $5,040 representing 9.6 hours billed at $525/hour. Pursuant to the AAA Rules and the MSA, I award ICS $9,440 in fees and costs of the AAA and the Arbitrator.

## AWARD

1. In addition to amounts awarded in the Partial Final Award. Claimant is awarded attorneys' fees and costs against Respondent caused by the breach of the MSA and failure to pay for professional services rendered. Within thirty (30) days from the date of transmittal of this Final Award to the parties, Respondent shall pay to ICS the sum of $5,580 in attorneys' fees, $5,040 in the Arbitrator's fees and $4,400  in AAA administrative costs for a total of $15,020.

2. This Final Award is in final settlement of all claims and counterclaims submitted in this Arbitration.

SO ORDERED.

Dated: July 6, 2020.

_____
Merriann M. Panarella, Esq.
Arbitrator